NOT FOR PUBLICATION (Docket No. 15)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

RAMON RODRIGUEZ and IVELISSE RODRIGUEZ,

Plaintiffs

v.

GEORGE W. HAYMAN, Individually and as Commissioner for the New Jersey Department of Corrections, THOMAS SULLIVAN, Individually and as Administrator for Bayside State Prison, SCO F. SIENA, Individually and as a State Corrections Officer for the State of New Jersey, SCO J. HALL, Individually and as a State Corrections Officer for the State of New Jersey, SERGEANT CLEMENT, Individually and as a State Corrections Officer for the State of New Jersey, and JOHN DOE 1-100, Individually and as State Corrections Officers and/or Supervisors for the State of New Jersey,

Defendants

Civil No. 08-4239(RBK/KMW)

**OPINION**

**KUGLER**, United States District Judge:

This matter arises out of a severe attack that Plaintiff Ramon Rodriguez suffered while incarcerated at Bayside State Prison in Leesburg, New Jersey. Plaintiff Ramon alleges a violation of his Eighth Amendment rights under 42 U.S.C. § 1983, while his wife, Plaintiff Ivelisse Rodriguez, asserts a per quod claim under New Jersey law. Presently before the Court is

a Motion to Dismiss and for Summary Judgment filed by Defendants George W. Hayman, Thomas Sullivan, SCO F. Siena, SCO J. Hall, and Sergeant Clement (Docket No. 15).

For the reasons discussed below, Defendants' Motion is granted in part and denied in part.

## I. BACKGROUND

While this matter comes before the Court styled as a Motion to Dismiss *and* for Summary Judgment,[1] as is discussed below, the Court will treat the pending Motion as a motion to dismiss. Thus, the following facts, assumed true, are taken from the Complaint and the Special Investigation Division Reports incorporated by reference in the Complaint.

On August 22, 2006, Plaintiff Ramon was an inmate under the care and custody of the State of New Jersey Department of Corrections. He was assigned to E-Unit, cell 2-2-10, Bayside State Prison. On that date at approximately 8 a.m., fellow inmates Malcolm Williams, Jonathan Cutler, and Richard Green entered Plaintiff Ramon's cell and severely beat him. Plaintiff Ramon was discovered at approximately 8:10 a.m. by Defendant Siena, a State Corrections Officer assigned to E-Unit. Defendant Siena had Defendant Hall, also a State Corrections Officer assigned to E-Unit, call for medical assistance.

The attack was so serious that Plaintiff Ramon was placed in the Intensive Care Unit at Saint Francis Medical Center. Plaintiff Ramon's initial diagnosis was severe head trauma, pansinusitis, multiple facial fractures, rib fractures, pulmonary contusion in the upper left lobe, subcutaneous emphysema within the left chest wall, significant soft tissue trauma to the right side of the face, and acute fractures of the mandible, right maxillary sinus extending to the floor of the

[1] As opposed to, "in the alternative."

orbit and lateral wall of orbit and both zygomatic arches. He was placed on a mechanical ventilator and underwent a tracheostomy. Plaintiff Ramon did not regain consciousness until September 13, 2006. He claims that the attack resulted in permanent injuries.

After the attack, the Special Investigations Division (SID) of the New Jersey Department of Corrections began an inquiry, and later produced two reports.[2] The SID investigation revealed that inmates Williams, Cutler, and Green were responsible for the attack. All three men were members of the "Blood" gang and each had been labeled a "security threat group member" by the Department of Corrections. Compl. at ¶¶ 23-25. The three inmates had apparently carried out the attack on the orders of inmate Williams because he believed that Plaintiff Ramon was a "snitch." Compl. at ¶ 19. Williams formed this belief and ordered the attack on the night of August 21, 2006 after reading an inmate remedy form[3] accusing Williams of "shaking down" other inmates. Compl. at ¶ 20. Williams believed that it was Plaintiff Ramon who wrote the form and thus ordered the attack on him. Whether or not Plaintiff Ramon actually did write the form is not clear on the record. Even less clear is how Williams came to possess the form.

The SID investigation also included a search of inmate Cutler's cell. Under his mattress investigators found two pieces of paper. These papers contained Plaintiff Ramon's name, date of birth, SBI number and the phrase "follow up infection." Compl. at ¶ 21.

Prior to the assault and investigation, Plaintiff Ramon "on multiple occasions" submitted inmate remedy forms alleging that his cellmate Glen Wood–who was not involved in the

---

[2] The Special Investigation Division Reports were attached to the Affidavit of Reginald Easley, a Senior Investigator in the SID, which was filed with Defendants' Motion.

[3] Exactly what an inmate remedy form is has not been explained by either party. Seemingly it is a written form used to file grievances with prison officials.

attack–was a habitual drug user. Compl. at ¶ 26. Plaintiff Ramon repeatedly told "Defendants" that he was fearful of Wood and he requested to be moved. Compl. at ¶ 26. While Defendants interviewed both Plaintiff Ramon and Wood, they took no actions to protect him. However, seemingly because of this complaining and use of inmate remedy forms, Plaintiff Ramon earned a reputation, at least with the Defendants, as an informant and a snitch. Compl. at ¶ 27. Critically, the Complaint does not say which "Defendants" Plaintiff Ramon spoke to, and thus seemingly implies that he spoke to all of them and that all of them were aware that he was at risk.

Plaintiff Ramon, along with his wife, filed a two count complaint on August 21, 2008 against Defendants Siena and Hall; as well as, George Hayman, Commissioner for the New Jersey Department of Corrections; Thomas Sullivan, Administrator for Bayside State Prison; Sergeant Clement, a State Corrections Officer assigned to E-Unit; and John Doe 1-100. Defendants were sued in both their official and individual capacities. In Count One, Plaintiff Ramon seeks relief under 42 U.S.C. § 1983 for violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff Ramon claims that, among other things, Defendants knew he was at risk because he was a known snitch and did nothing to protect him. Plaintiff Ramon further claims that the inmates who attacked him could only have had the inmate remedy form through "a security breach and/or through the unlawful acts of State Corrections Officers." Compl. at ¶ 29. He seeks punitive damages for the violation in addition to compensatory damages and costs and reasonable attorneys' fees. In Count Two, Plaintiff Ivelisse seeks relief for a per quod claim under New Jersey law.

## II. STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11. First, the court must separate factual allegations from legal conclusions. Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief." Id. at 1950. Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense." Id. A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible. See id.

In this dispute, Defendants' Motion is styled as a Motion to Dismiss "and" for Summary Judgment. See Docket No. 15. Defendants do not seemingly seek summary judgment in the alternative, but seek relief both under Federal Rule of Civil Procedure 12(b)(6) and 56. However, Defendants' brief in support of the motion suggests that they only seek summary

judgment because the Defendants wish to use the SID Reports to support their requested relief. See Def. br. at 11-13. The Court finds that use of these Reports does not transform consideration of the pending Motion into one for summary judgment.

In considering a motion to dismiss, the court generally may not consider matters "extraneous to the pleadings." In re Burlington Coat Factory Sec. Lit., 114 F.3d 1410, 1426 (3d Cir. 1997). However, the court may consider a "'document *integral to or expressly relied* upon in the complaint'" without converting the motion to dismiss to a summary judgment motion. Id. (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Further, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994).

Here, the Complaint expressly relies upon the SID Reports. See Compl. at ¶ 19 ("An ensuing investigation revealed that inmates Williams, Cutler, and Green were responsible for the assault."), ¶ 20 ("During the course of the investigation it was revealed that on the evening of August 21, 2006, inmate Williams was in possession of inmate remedy forms that accused him of harassing and 'shaking down' other inmates."), ¶ 21 ("During the ensuing investigation and search of inmate Cutler's cell, two pieces of paper were found under his mattress."). Because the SID Reports are integral to and expressly relied upon by Plaintiffs, the Court can consider them without converting the pending Motion to a motion for summary judgment. Thus, the Court's analysis below only examines the Complaint under a Rule 12(b)(6) standard.[4]

[4] As will be shown, however, even if the Court also considered the pending Motion as a motion for summary judgment, the Motion could not be granted because genuine issues of material fact exist as to whether the Defendants knew Plaintiff Ramon was at substantial risk and

## III. DISCUSSION

### A. Unopposed Motion to Dismiss

In addition to treating the pending Motion solely as a motion to dismiss, the Court will also treat the pending Motion as unopposed. Under Local Civil Rule 7.1(d)(7), "[t]he Court may reject any brief or other paper not filed within the time specified." The purpose of this rule is plainly obvious: to ensure the timely and complete disposition of pending motions.

Defendants filed the present Motion on April 6, 2009. Under Local Civil Rule 7.1(d)(5), Plaintiffs' brief in opposition was due April 20, 2009. On May 1, 2009, eleven days after the responsive brief was due, Plaintiffs filed a letter with the Court requesting additional time to respond. Docket No. 16. The Court granted this request and ordered as follows: "Plaintiffs' opposition shall be filed and served on or before May 29, 2009 and Defendants' Reply filed and served on or before June 5, 2009." Docket No. 16.

Notwithstanding the May 4th Order, Plaintiffs–without explanation or a further request for an extension–did not file a responsive brief until August 17, 2009. This was a full 79 days after the Court-ordered extension and 119 days after the original due date. Plaintiffs also failed to file proof or acknowledgment of service with the brief as required by Local Civil Rule 7.1(d)(2), and the Defendants never filed a reply brief.[5]

Because of the gross untimeliness of Plaintiffs' brief and because Plaintiffs never sought leave of the Court to file out-of-time or to explain the untimeliness of their response, the Court

---

deliberately chose to ignore the risk.

[5] The CM/ECF docket does appear to show that notice of Plaintiffs' untimely brief was sent via email to the Defendants on August 17, 2009. Docket No. 17.

will disregard the August 17 brief under Local Civil Rule 7.1(d)(7). See Cannon v. Cherry Hill Toyota, Inc., 190 F.R.D. 147, 151 (D.N.J.) (rejecting reply brief where 1) filed out-of-time, 2) party did not petition court for additional time in which to respond, and 3) party did not attempt to explain why reply almost four weeks late).

Nevertheless, even though the present Motion is unopposed, the Court is mindful of the Third Circuit's admonition that an unopposed motion to dismiss must still be analyzed on its merits. See Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991). Thus, the inquiry must now turn to the merits of the Defendants' motion and whether Plaintiffs have stated a plausible claim for relief.

**B. Eleventh Amendment Immunity**

Plaintiffs filed the two count Complaint against the Defendants' in both their official and individual capacities. See Compl. at ¶¶ 3-7. Defendants argue that the claims against the Defendants in their official capacities must be dismissed because such claims are barred by the Eleventh Amendment and because the Defendants, in their official capacity, are not persons under 42 U.S.C. § 1983. Def. br. at 6. The Court agrees.

The Eleventh Amendment[6] protects states and their agencies and departments from suit in federal court regardless of the kind of relief sought. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Absent a waiver of immunity by the state, the Eleventh Amendment precludes federal suits for money damages against states and state officers sued in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). In this case, Plaintiffs seek

---

[6] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.

money damages against state prison officials. Because nothing in § 1983 abrogates a state's Eleventh Amendment immunity, that immunity bars Plaintiffs' claims against the Defendants in their official capacities. See Quern v. Jordan, 440 U.S. 332 (1979); see also Jefferson v. Hayman, No. 07-5060, 2009 WL 2634884, at *2 (D.N.J. Aug. 24, 2009) (granting Eleventh Amendment immunity to George Hayman); Clayton v. Clement, No. 06-5426, 2007 WL 4260002, at *5 (D.N.J. Nov. 30, 2007) (granting Eleventh Amendment immunity to corrections officers at Bayside State Prison); Grabow v. S. State Corr. Facility, 726 F. Supp. 537, 539 (D.N.J. 1989) (granting Eleventh Amendment immunity to Commissioner of the Department of Corrections).

As to Defendants' second point, that they are not "persons" under § 1983,[7] that assertion is correct as well. A suit against a state official in his official capacity is a suit against his office, and therefore amounts to a suit against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). A state, nor its officials acting in their official capacities, are "persons" subject to suit under § 1983. Id. Plaintiffs' claims here, at least in part, are against prison officials for actions taken in their official capacities. For those actions, the Defendants are not persons within § 1983, and Plaintiffs' claims against them must be dismissed.

Therefore, the Court grants the Defendants' Motion to Dismiss as to all claims against the Defendants in their official capacities.

---

[7] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

**C. Respondeat Superior Liability**

Defendants next argue that the claims against Defendants Hayman, Sullivan and Clement should be dismissed because liability under § 1983 cannot be based on respondeat superior. Def. br. at 9. Read liberally, the Complaint seems to state claims against Commissioner Hayman, Administrator Sullivan, and Sergeant Clement in two ways. First, the Complaint seems to suggest that Plaintiff Ramon personally informed each of these Defendants that he was at risk because he was a snitch, and that each of these supervisor defendants deliberately chose to ignore his request for protection. See Compl. at ¶ 26 ("Plaintiff Rodriguez repeatedly told Defendants he was fearful of inmate Wood. Defendants interviewed both Plaintiff Rodriguez and inmate Wood on separate occasions at separate locations but took no action to protect Plaintiff Rodriguez."), ¶ 27 ("At all times relevant herein, Defendants were aware that Plaintiff Rodriguez was at a significantly heightened risk of physical harm as he was acting as an informant and was labeled 'snitch.' He was acting as an informant in a prison unit that housed known members of the security risk group, the Bloods. Defendants took no action to protect him from harm.").

Second, the Complaint seems to also suggest that these supervisor Defendants should be held liable because they negligently supervised their subordinates, created a policy or custom permitting unconstitutional practices, and that they had repeatedly failed to take remedial measures to eliminate the risk. See Compl. at ¶ 35. Plaintiffs' first grounds for relief against the supervisor Defendants is addressed fully below; however, as to the second grounds (i.e., liability because of a policy or custom permitting constitutional violations), Plaintiff has not stated a plausible claim for relief. However, the Court will grant leave to amend as to the second ground.

Supervisors are not liable under § 1983 under a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91, 694 (1978); Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also Iqbal, 129 S. Ct. at 1948 ("Because vicarious liability is inapplicable under . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, though the official's own actions, has violated the Constitution."). Liability for a supervisor can attach where he or she establishes an official policy or custom that supports a violation of constitutional rights. See Bielevicz v. Dubinon, 915 F.2d 845, 849-50 (3d Cir. 1990); Ayres v. Ellis, No. 09-4247, 2009 WL 3681892, at *3-4 (D.N.J. Nov. 4, 2009).

To the extent that Plaintiffs' claims are construed as seeking liability against Defendants Hayman, Sullivan, and Clement solely because of their negligent supervision of subordinate prison officials, those claims fail. They are impermissible respondeat superior claims.

Furthermore, to the extent that Plaintiffs' claims are construed as seeking liability based on a policy or custom of the supervisory Defendants, those claims must also fail. The only allegation to support that a policy or custom exists is that the inmate remedy form that inmate Williams possessed "only could have been obtained through a security breach and/or through the unlawful act(s) of State Corrections Officers." Compl. at ¶ 29. However, this statement is simply a conclusory allegation that cannot be construed as true. See Iqbal, 129 S. Ct. at 1951.

Plaintiffs have not shown which policy or custom caused Plaintiff Ramon's rights to be violated and they have not pled any facts to show that any such policy or custom even exists–let alone that the supervisor Defendants formed it and knew that it would cause harm. Simply put, Plaintiffs have failed to state a claim for relief against the supervisor Defendants based on a policy or custom.

Therefore, Defendants' motion to dismiss is granted to the extent that Plaintiffs claims against Defendants Hayman, Sullivan, and Clement are based on respondeat superior or are based on liability for a policy or custom. However, Plaintiffs are granted leave to amend the Complaint within 60 days of the accompanying Order to the extent that discovery on the issues discussed below reveals an actionable policy or custom. See Shane v. Fauver, 213 F.3d 113, 115-116 (3d Cir. 2000) (holding court should generally grant leave to amend a complaint dismissed for failure to state a claim).

**D. Eighth Amendment Claim**

The Defendants next argue that Plaintiffs' claims should be dismissed because Plaintiffs have failed to show that the Defendants knew of a substantial risk of harm to Plaintiff Ramon and failed to protect him from that risk. Def. br. at 11. The Court disagrees and finds that Plaintiffs have sufficiently pled that Plaintiff Ramon was at a substantial risk of harm and that Plaintiffs have alleged sufficient facts to show plausibly that the Defendants deliberately ignored the risk.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits inflicting "cruel and unusual punishments" on those convicted of crimes. See Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981). Under the

Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir.1992). Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (1994) (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes, 452 U.S. at 347).

To successfully state a claim for a violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim. The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir.1996). Applying this standard in the context of a failure-to-protect claim, the inmate must show that he was "incarcerated under conditions posing a substantial risk of harm," and that prison officials knew of and disregarded the excessive risk to inmate safety. Farmer, 511 U.S. at 833, 837.

"A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir.1985). "Whether . . . prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that . . . prison official[s] knew of a substantial risk from the very fact that the risk was obvious."

Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care; it is a state of mind equivalent to a reckless disregard of a known risk of harm. See id. at 834.

**1. Substantial risk**

As to the first part of the Farmer test, the Court finds that Plaintiffs have sufficiently alleged that Plaintiff Ramon was incarcerated under conditions posing a substantial risk of harm. Separating factual allegations from legal conclusions, the Court finds the following facts relevant to Plaintiffs' claim: 1) Plaintiff Ramon had in the past submitted inmate remedy forms regarding his cellmate; 2) Plaintiff Ramon had submitted those forms on multiple occasions; 3) Plaintiff Ramon submitted those forms to the Defendants[8]; 4) Plaintiff Ramon repeatedly told the Defendants he was fearful of his cellmate; 5) Plaintiff Ramon was an informant or a "snitch"; 6) Defendants failed to protect Plaintiff from his cellmate or anyone else despite repeated requests to be moved; 7) Defendants were aware that Plaintiff Ramon was housed with members of the Bloods; and 8) the three Bloods members who attacked Plaintiff Ramon were in possession of an inmate remedy form. See Compl. at ¶¶ 19-27.

These facts are sufficient to plausibly show that Plaintiff Ramon was incarcerated under conditions posing a substantial risk of harm. The single most important fact above is that Plaintiff was an informant or "snitch." An inmate being labeled a snitch creates a substantial risk of harm. See Irving v. Dormire, 519 F.3d 441, 451 (8th Cir. 2008) ("[A]n inmate who is considered a snitch is in danger of being assaulted by other inmates . . ."); Reece v. Groose, 60

---

[8] The Court uses "Defendants" here to mean all Defendants, construing the term as it was used in the Complaint. While the Court finds it unlikely that Plaintiff actually communicated with the Commissioner of the Department of Corrections or even the Administrator for Bayside Prison, the Court must accept Plaintiffs' factual allegations as true at this time. See Fowler, 578 F.3d at 210.

F.3d 487, 491 (8th Cir. 1995) (holding an inmate being a known snitch is an obvious risk for which prison officials must take reasonable measures to abate the risk); Gullatte v. Potts, 654 F.2d 1007, 1012 (5th Cir. 1981) ("When officials are aware of a danger to an inmate's health and safety, . . . as appears to be the case when an inmate cooperates with an official prison investigation, it does violate the constitutional proscription against cruel and unusual punishment to fail to afford that inmate reasonable protections."); see also Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001) (holding prison officials labeling an inmate a snitch satisfies the Farmer standard); Puckett v. N. Kern State Prison Employees, No. 08-1243, 2009 WL 160294, at *5 (E.D. Cal. Jan. 21, 2009) (holding allegation that defendant prison employees labeled inmate plaintiff a snitch, and where inmate subsequently attacked, was sufficient to survive dismissal); Walsh v. Goord, No. 07-0246, 2007 WL 1572146, at *10 (W.D.N.Y. May 23, 2007) (holding if defendants made statements to other inmates that inmate plaintiff was a snitch, and then plaintiff subsequently attacked, then Eighth Amendment claim may be stated).

Under the facts as alleged by Plaintiffs, Plaintiff Ramon was objectively at a substantial risk of harm from being a snitch. Plaintiffs pled that Plaintiff Ramon repeatedly informed on his cellmate and that the Defendants were aware that he was in fear of reprisal. Further, Plaintiffs allege that the Defendants did nothing to protect Plaintiff Ramon despite knowing that he was housed with men who were a security risk. Thus, Plaintiffs have sufficiently alleged that Plaintiff Ramon was incarcerated under conditions posing a substantial risk of harm.

**2. Deliberate disregard**

Having determined that Plaintiffs have sufficiently met the first part of the Farmer test, the Court must now examine the second part, i.e., whether Plaintiffs have sufficiently alleged that

the Defendants deliberately disregarded the substantial risk. The Court finds that Plaintiffs have met their pleading burden and have alleged a plausible Eighth Amendment violation.

Under Farmer, a plaintiff is required to plead that the defendant subjectively knew of the risk faced by the inmate plaintiff and deliberately chose to disregard it. 511 U.S. at 842. Knowledge is a "question of fact" demonstrated in the "usual ways." Id. One such way is by showing that the risk was so obvious that the defendant necessarily must have known about. Id.

As mentioned above in the substantial risk analysis, the Court finds the following facts relevant to Plaintiffs' claim: 1) Plaintiff Ramon had in the past submitted inmate remedy forms regarding his cellmate; 2) Plaintiff Ramon had submitted those forms on multiple occasions; 3) Plaintiff Ramon submitted those forms to the Defendants; 4) Plaintiff Ramon repeatedly told the Defendants he was fearful of his cellmate; 5) Plaintiff Ramon was an informant or a "snitch"; 6) Defendants failed to protect Plaintiff from his cellmate or anyone else despite repeated requests to be moved; 7) Defendants were aware that Plaintiff Ramon was housed with members of the Bloods; and 8) the three Bloods members who attacked Plaintiff Ramon were in possession of an inmate remedy form. See Compl. at ¶¶ 19-27.

These facts support the obviousness of Plaintiff Ramon's risk such that Defendants must have known it and disregarded it. Defendants are prison officials and Plaintiffs allege that Plaintiff Ramon, in effect, told them that he was a snitch and that he needed protection. Prison officials, better than anyone else, should know the risk that informants face. See Irving, 519 F.3d at 451 ("After all, who knows better the opprobrium and consequent effect that attaches to the label of snitch than those who work daily within the inmate population."). By pleading that the Defendants did nothing despite knowing that Plaintiff Ramon was informing on his cellmate,

Plaintiffs have plausibly alleged that Defendants deliberately chose to disregard a substantial risk to Plaintiff Ramon's safety. Defendants' argument that Plaintiffs' claim should fail because they did not plead that Defendants were aware of the attack before it occurred misses the mark. Def. br. at 12. The success of Plaintiffs' claim does not depend on the Defendants' specific a priori knowledge of the attack, but rather depends on the obviousness of the risk to Plaintiff Ramon from which it can be inferred that Defendants deliberately disregarded his safety.

Plaintiffs' pleading also plausibly supports deliberate disregard in another way. Plaintiffs have pled that the inmates who attacked Plaintiff Ramon were in possession of an inmate remedy form. Compl. at ¶ 29. This fact alone supports the inference that the Defendants, prison officials and likely the only persons who should have had access to these forms, deliberately disregarded a risk to Plaintiff Ramon by supplying sensitive documents to known dangerous inmates. See Benefield, 241 F.3d at 1272 (holding the Eighth Amendment reaches official conduct that "'is sure or very likely to cause'" serious injury by other inmates (quoting Helling v. McKinney, 509 U.S. 25, 33 (1993))). Defendants' argument that nothing in the SID Reports establishes a link to the Defendants, Def. br. at 12, asks the Court to ignore a rather large elephant in the room–namely, how did known dangerous inmates come to possess sensitive information.

Therefore, Plaintiffs have stated a plausible claim for violation of the Eighth Amendment.

**E. Qualified Immunity**

Defendants argue that even if Plaintiffs have stated a constitutional violation, the claims should be dismissed because Defendants are entitled to qualified immunity. Def. br. at 13-15. The Court finds that Defendants are not entitled to qualified immunity because Plaintiffs have sufficiently alleged a violation of a constitutional right, and the Court finds that the right was

clearly established in August 2006.

Qualified immunity protects government officials from liability for civil damages where their performance of discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To determine whether government officials are entitled to qualified immunity, a court must first determine whether, taken in the light most favorable to the plaintiff, the facts alleged show that the official violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If this question is answered in the affirmative, the court must then consider whether the right was clearly established. Id. A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

As just discussed, the facts in the Complaint taken in a light most favorable to the Plaintiffs show that the Defendant officials violated Plaintiff Ramon's constitutional right to be free from cruel and unusual punishment. The remaining inquiry then is whether Plaintiff Ramon's right was clearly established in August 2006 when he was attacked. The Court finds that since Farmer was decided in 1994, a prison official's duty to protect a prisoner from violence at the hands of other prisoners when the official knows of a heightened risk of harm has been "well-established." See Hooks v. Schultz, No. 07-5627, 2009 WL 777394, at *14 (D.N.J. Mar. 19, 2009); see also Benefield, 241 F.3d at 1271 (holding law clearly established that prison official labeling an inmate as a "snitch," communicating it to other inmates, and being aware of the danger violates inmate's Eighth Amendment rights). Thus, a reasonable official under the circumstances as alleged by the Plaintiffs would have understood that what he was doing violated

Plaintiff Ramon's rights.

Therefore, the Court finds that Defendants are not entitled to qualified immunity.

**F. Punitive Damages**

Defendants further argue that Plaintiffs' claims for punitive damages must be dismissed because no evidence of evil motive or callous indifference to a federal right exists. Def. br. at 15-16. The Court finds that Plaintiffs' claims for punitive cannot be dismissed at this stage.

A plaintiff may recover punitive damages when a "defendant's conduct is motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983); see also Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir.1989) ("[F]or a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard."). The standard for "reckless or callous" is an objective one. Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 873 (E.D. Pa. 2000). In this case, Plaintiffs have alleged that Defendants deliberately disregarded a known risk to Plaintiff Ramon. If proven, a jury could reasonably conclude that the Defendants acted with reckless disregard to Plaintiff Ramon's right to be free from cruel and unusual punishment.

Therefore, the Court denies Defendants' Motion as to the claim for punitive damages.

**G. Per Quod Claim**

Defendants' last argument is that Plaintiff Ivelisse's per quod claim should be dismissed because Plaintiff Ramon has no independent cause of action. Def. br. at 16. A per quod, or loss of consortium, claim is a separate cause of action for loss of society, companionship, and

services from an injured spouse. See Kibble v. Weeks Dredging & Constr. Co., 735 A.2d 1142, 1149 (N.J. 1999). A per quod claim is a derivative cause of action whose viability depends on the existence of tortious conduct against the injured spouse. See Tichenor v. Santillo, 527 A.2d 78, 82 (N.J. Super. Ct. App. Div. 1987). Because the Court finds that Plaintiff Ramon has a plausible claim under § 1983 for an Eighth Amendment violation, Plaintiff Ivelisse's per quod claim survives at least until Plaintiff Ramon's claim is found not viable.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss. The Court GRANTS the Motion as to the claims against the Defendants in their official capacities. The Court GRANTS the Motion as to the claims against Defendants Hayman, Sullivan, and Clement based on liability under respondeat superior and based on liability for a policy or custom. The Court GRANTS Plaintiffs leave to amend the Complaint within 60 days of the accompanying Order to state a claim against Defendants Hayman, Sullivan, or Clement for liability based on policy or custom. The Court DENIES the Motion as to the claims against the Defendants in their personal capacities. The Court further DENIES the Motion as to the punitive damages claim. Finally, the Court DENIES the Motion as to Plaintiff Ivelisse's per quod claim.

Dated: 11-23-2009

/s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge