**PATTI & PATTI, ESQS.**
255 Woodport Road
Sparta, New Jersey 07871
(973) 729-5040
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY, CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| RAMON RODRIGUEUZ and IVELISSE RODRIGUEZ, his wife, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No.  08-4239 (RBK) |
| | : | |
| v. | : | |
| | : | PLAINTIFFS' BRIEF IN OPPOSITION TO |
| | : | DEFENDANTS' MOTION FOR |
| | : | SUMMARY JUDGMENT |
| FRED SIENNA, Corrections Officer, | : | |
| JEFFREY J. HALL, Corrections Officer, | : | |
| ANDREW ROMAN, Corrections Officer, | : | Return Date:   April 30, 2012 |
| D. DOUGHERTY, Corrections Officer, | : | |
| REGINALD EASLEY, Senior Investigator, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO <u>FED. R. CIV. P.</u> 56.**

---

On the Brief and Of Counsel
    Jeffrey M. Patti, Esq.

PATTI & PATTI, ESQS.
255 Woodport Road
Sparta, New Jersey 07871
(973) 729-5040
Attorneys for Plaintiffs

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     1

STATEMENT OF PROCEDURAL HISTORY AND FACTS . . . . . . . . . . . . . . . .     2


ARGUMENT

      POINT I

           SUMMARY JUDGMENT IS NOT PROPER AS THERE EXISTS
           GENUINE ISSUES OF MATERIAL FACT TO BE PRESENTED
           TO A JURY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     4

      POINT II

           ADMISSIBLE EVIDENCE TO SUBSTANTIATE THE CLAIMS
           IS CAPABLE OF BEING PRODUCED AT TRIAL, THUS
           SUMMARY JUDGMENT IS NOT PROPER AND MUST BE
           DENIED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .     5

      POINT III

           PLAINTIFF HAS PROPERLY ASSERTED A VIABLE CLAIM
           FOR §1983 CONSPIRACY AND THEREFORE SUMMARY
           JUDGMENT MUST BE DENIED. . . . . . . . . . . . . . . .     11

      POINT IV

           THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED
           IMMUNITY AS THEY ACTED WITH DELIBERATE
           INDIFFERENCE TO PLAINTIFF'S WELL ESTABLISHED
           CONSTITUTIONAL RIGHTS. . . . . . . . . . . . . . . . . . .     12


      POINTS V, VI, AND VII . . . . . . . . . . . . . . . . . . . . . . . . . . . .     15


CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

TABLE OF AUTHORITIES

CASES

<u>A.M. v. Luzerne Co. Juv. Det. Ctr.</u>, 372 F.3d 572 (3d Cir. 2004) . . . . . . . . . . .   5

<u>Beers Capitol v.Whetzel</u>, 256 F.3d 120 (3rd Cir. 2001). . . . . . . . . . . . . . . . . . .   14

<u>Cortes-Quinones v. Jiminez-Nettleship</u>, 842 F.2d 556, 558, cert. denied,
488 U.S. 823 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

<u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 13, 14, 15

<u>Frederick Hart & Co. v. Recordgraph Corp.</u> 169 F.2d 580 (3d Cir. 1948). . . . . . . . . .   4

<u>Galvin v. Jennings</u>, 289 F.2d 15 (3d Cir. 1961). . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

<u>Hileman v. Northwest Engineering Co.</u>, 346 F.2d 668 (6th Cir. 1965) . . . . . . . . . . .   10

<u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984). . . . . . . . . . . . . . . . . . . . . . . .   4

<u>Hudson v. Palmer</u>, 468 U.S. 517 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

<u>Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 254 (3d Cir. 1999) . .   11

<u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

<u>Shelton v. Univ. of Med. & Dentistry of N.J.</u> 223 F.3d 220, 223 at n. 2 (3d Cir. 2000) 7, 9

<u>Smith v. City of Allentown</u>, 589 F.3d 684, 693 (3d Cir. 2009) . . . . . . . . . . . . . . . 5, 7, 8, 11

<u>United States v. Barrett</u>, 539 F.2d 244, 251 (1st Cir. 1976) . . . . . . . . . . . . . . . . . .   10

<u>United States v. Garcia</u>, 897 F.2d 1413, 1420 (7th Cir. 1990) . . . . . . . . . . . . . .   10

<u>United States v. Lang</u>, 589 F.2d 92, 97 (2d Cir. 1978) . . . . . . . . . . . . . . . . . .   10

<u>United States v. Mills</u>, 704 F.2d 1553, 1562 (11th Cir. 1983) (one inmate to another), cert.

denied, 467 U.S. 1243 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

<u>United States v. Paguio</u>, 114 F.3d 928, 933 (9th Cir. 1997) . . . . . . . . . . . . . . . . . .   10

Wilson v. Seiter, 501 U.S. 294, 303 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

42 U.S.C. §1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 11, 12

Fed. R. Evid. 801(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..   8

Fed. R. Evid. 801(d)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

Fed. R. Evid. 802 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..   8

Fed. R. Evid. 804 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

Fed. R. Evid. 804(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

Fed. R. Evid. 805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

## PRELIMINARY STATEMENT

Plaintiff Ramon Rodriguez brings the present action against Defendants, Corrections Officers Jeffrey Hall, Fred Sienna, Andrew Roman, Delia Dougherty and Investigator Reginald Easley as a result of their failure to protect him from a savage assault perpetrated by inmates known to members of the known security threat group the bloods causing near fatal and severe permanent injury to Plaintiff. As Defendants have raised, any claims against the Defendants in their official capacities should be dismissed as they are barred by the Eleventh Amendment and/or they are not being brought against "persons" subject to suit under §1983. As such, all Defendants should be dismissed in their official capacity.

Plaintiff's second claim, a §1983 conspiracy count, is brought against Defendants Roman, Dougherty and Easley for conspiring to deprive Plaintiff of his federally protected Constitutional rights. Plaintiff concedes that Defendants Hall and Sienna were improperly included in the conspiracy count, and therefore should be dismissed with regard to same.

Plaintiff Ivelisse Rodriguez, Ramon Rodriguez's wife, in count three of the amended complaint brings a separate per quod claim derivative to the injuries he suffered as a result of the assault. Defendants have argued should counts one and two of the amended complaint be dismissed, Mrs. Rodriguez's per quod claim would also have to be dismissed as it is purely derivative of and dependent upon the above stated causes of action. Plaintiffs agree. However, Defendants should also agree should counts one and two survive summary judgment, Mrs. Rodriguez's per quod claim survives.

Similarly, should Plaintiffs' substantive claims contained in counts one and two survive summary judgment their demand for punitive damages would also survive.

1

STATEMENT OF PROCEDURAL HISTORY AND FACTS

On or about August 22, 2006, Plaintiff Ramon Rodriguez was an inmate under the care and custody of the Commissioner of the New Jersey Department of Corrections lodged at Bayside State Prison assigned to E-Unit, Cell 2-2-10.  On the same date, Malcolm Williams, Jonathan Cutler, and Richard Green were all inmates at Bayside State Prison also assigned to E-Unit.  Williams and Green were known members of the security threat group the "Bloods." Plaintiff went to the "Sergeant Shack" every morning to complain about Defendants Roman and Dougherty and his cellmate.  His cellmate was smoking and using drugs in the cell and he was trying to get a change of room assignment, however, Defendants Roman and Dougherty were doing nothing about it.  At approximately 8:00 a.m. on the above mentioned date, without provocation or warning, Plaintiff was suddenly and violently assaulted by Williams, Cutler, and Green inside his cell.  As a result of the assault, Plaintiff was placed in the Intensive Care Unit at St. Francis Medical Center where his initial diagnosis was severe head trauma ("bruising on the brain"), pansinusitis, multiple facial fractures, rib fractures, pulmonary contusion in the upper the left upper lobe, subcutaneous emphysema within the left chest wall, significant soft tissue trauma to the right side of the face and acute fractures of the mandible, right maxillary sinus extending to the floor of the orbit and lateral wall of orbit and both zygomatic arches.  Plaintiff was placed on a mechanical ventilator and underwent a tracheotomy.  Plaintiff did not regain consciousness until September 13, 2006.

An ensuing Special Investigations Division ("SID") investigation revealed that inmates Malcolm Williams, Jonathan Cutler, and Richard Green were responsible for the assault.  The assault was initiated and planned by inmate Williams at the order of Defendants Roman and Dougherty.  It was believed that Plaintiff was a snitch.  Plaintiff also persistently complained

about and complained to Officers Roman and Dougherty for not doing anything about his complaints. During the course of the investigation it was revealed that on the evening of August 21, 2006, inmate Williams was in possession of at least one Inmate Remedy Form with Plaintiff's name on it. Through the discovery process, it has further been learned that Williams had access to said Inmate Remedy Forms because Defendants Roman and Dougherty went through inmate mail and gave those forms to Williams. Additionally, there is sworn testimony that Defendants Roman and Dougherty gave the orders to assault Plaintiff. On the eve of the assault on Plaintiff, Defendants Roman and Dougherty "tore up" Plaintiff's room, throwing his belongings all over the floor and dragging his locker to the first floor and emptied it out in the middle of the floor. Plaintiff was forced to drag his locker back up to his cell. Defendants Roman and Dougherty kept order in the E-Unit during their shift by using intimidation and fear. They often, and in this case, enlisted the bloods to do their bidding. Inmates lived in fear of Defendants Roman and Dougherty and walked on egg shells. Defendants Roman and Dougherty did not want anything to happen on their shift, so it was determined that the assault should happen on the first shift where Defendants Sienna and Hall were more lax with jail policies and procedures.

At the time of the assault, inmates Williams, Cutler and Green were assigned to the first tier and did not have permission to be on the second tier. However, sworn testimony revealed that Defendants Hall and Sienna were known by the inmates as being lax with the policies and procedures of the prison, and specifically, inmates Williams, Cutler and Green planned to assault Plaintiff on their shift as a result of their laissez-faire attitude toward said policies and procedures. During the ensuing investigation and search of inmate Cutler's cell, two pieces of

3

paper were under his mattress. The pieces of paper contained plaintiff's name, date of birth, SBI number and the phrase "follow up infection."

POINT I

SUMMARY JUDGMENT IS NOT PROPER AS THERE EXISTS
GENUINE ISSUES OF MATERIAL FACT TO BE PRESENTED
TO A JURY.

The Defendants properly lay out the summary judgment standard. The court must assume that all of the factual allegations set forth in Plaintiff's complaint are true and it must also draw all reasonable inferences from the pleaded factual allegations in their favor. Galvin v. Jennings, 289 F.2d 15 (3d Cir. 1961), Frederick Hart & Co. v. Recordgraph Corp. 169 F.2d 580 (3d Cir. 1948). In doing so, the court must dismiss the complaint on the pleadings if it appears beyond doubt that plaintiffs' can prove no set of facts consistent with the allegations of the claim that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In applying the foregoing principles, Plaintiff's amended complaint should not be dismissed as there exist genuine issues of material fact to be determined by a jury. Plaintiff has clearly laid out a violation of his 8th Amendment rights and has clearly shown deliberate indifference on behalf of Defendants. As such, summary judgment is improper and must not be granted.

Our courts have uniformly held "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994), quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (CA1). The Eighth Amendment to the United States Constitution, applicable to the States via the Fourteenth Amendment imposes a duty on prison officials, among other things, to take reasonable measures to guarantee the safety of a prison inmate. Farmer v. Brennan, at 833, *citing* Hudson v. Palmer, 468 U.S. 517 (1984).

There should be little dispute that plaintiff has a well-defined and clearly established

4

liberty interest in his personal security and well-being, <u>A.M. v. Luzerne Co. Juv. Det. Ctr.</u>, 372 F.3d 572 (3d Cir. 2004), and to be protected from cruel and unusual punishment and unnecessary and wanton infliction of pain. As stated in <u>Farmer</u>, the government and its officials are not free to let the state of nature take its course where persons with demonstrated proclivities for antisocial criminal, and often violent, conduct have been stripped of all means of self-protection. <u>Farmer</u> at 833. In the within matter, Defendants are being sued in their individual capacities for their own actionable acts and/or omissions.

Defendants' contention that Plaintiffs' "admitted" that Hall and Sienna were at their post is misleading, at the very least. Through the discovery process, it was learned that although Defendants Hall and Sienna did not leave their post, they stood idly by and watched 3 assailants walk right past them and up the stairs to Plaintiff's cell, where the assailants beat him so badly they nearly killed him. Defendant Sienna was "dozing". Moreover, through deposition testimony it has been brought to light that Defendants Hall and Sienna were known for allowing known gang members to roam freely through the prison; this was the reason that this assault took place on their shift.

POINT II

<u>ADMISSIBLE EVIDENCE TO SUBSTANTIATE THE CLAIMS<br>IS CAPABLE OF BEING PRODUCED AT TRIAL, THUS<br>SUMMARY JUDGMENT IS NOT PROPER AND MUST BE<br>DENIED.</u>

In support of Defendants' proposition that the hearsay statements of Jonathan Cutler are inadmissible as evidence at the Summary Judgment stage, they cite <u>Smith v. City of Allentown</u> 589 F.3d 684, 693 (3d Cir. 2009). However, this case can easily be distinguished from the case at bar. In <u>Smith</u>, Plaintiff Thomas Smith appealed an order granting summary judgment in favor

of the City of Allentown and its Mayor, Ed Pawlowski on Smith's claims for age discrimination and political affiliation.    The 3rd Circuit Court of Appeals affirmed. In 2000, Smith, a Republican, was appointed by former Mayor William Heydt, also a Republican as Superintendent of the City of Allentown Recreation Bureau.  In November 2001, Democrat Roy Afflerbach succeeded Heydt as Mayor.  Smith continued to serve as Superintendent throughout Afflerbach's tenure.    In early 2002, Afflerbach appointed Ed Pawlowski as Director of Community and Economic Development.  As such, Pawlowski became Smith's immediate supervisor in the City government.

In late 2004, Pawlowski resigned in protest over certain policies implemented by the Afflerbach administration.  In early 2005 Pawlowski announced his candidacy for Mayor of Allentown on the Democratic (sic) ticket.  The November 2005 election pitted Pawlowski, the Democrat against former Mayor Heydt on the Republican ticket.  Smith supported Heydt's campaign and placed a pro-Heydt campaign sign in his yard three weeks before the election. Pawlowski ultimately won the election.

Sometime during the first half of 2006, Smith allegedly had a conversation with his friend James Spang, a Democrat who had worked on Pawlowski's campaign.  According to Smith, Spang stated that Pawlowski "viewed Smith as a political enemy of sorts" and believed that Smith had improperly attempted to influence two members of the City's recreation commission to support Heydt's run for Mayor.  By contrast, Spang testified that he approached Smith to express concern that Heydt had received preferential invitations to events at SportsFest, while Pawlowski had not.  Spang testified he did not recall uttering the phrase "political enemy." He further testified that he never informed Pawlowski of his conversation with Smith, and Smith

possessed no knowledge regarding why Spang would have represented that Pawlowski considered Smith a political foe.

In May 2006, a review of Smith's file took place and it was determined that Smith was under performing. This review concluded that "Smith did not have the skill sets" to implement the City's vision for its recreation programming and he was given an ultimatum to either resign or retire.

The issue in Smith relevant to the case at bar concerned the alleged statement made by Spang to Smith that Pawlowski viewed Smith a "political enemy," as Smith contended that the "political enemy" comment provided evidence that he was fired due to his Republican affiliation. The United States District Court for the Eastern District of Pennsylvania found that Smith's testimony regarding Spang's "political enemy" comment constituted inadmissible hearsay that could not be considered on summary judgment. Because Smith could not identify an alternative source of Pawlowski's alleged political animosity toward him, the Court concluded that Smith lacked admissible evidence that Pawlowski considered Smith a political adversary. The 3rd Circuit Court of Appeals affirmed.

The 3rd Circuit, noting that the District Court refused to consider Smith's testimony about Spang's "political enemy" comment on hearsay grounds, held hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment. *Cf.* Shelton v. Univ. of Med. & Dentistry of N.J. 223 F.3d 220, 223 at n. 2 (3d Cir. 2000) which noted "in this circuit, hearsay statements can be considered on a motion for summary judgment if they are **capable** of admission at trial." (emphasis added)

In the case at bar, Defendants contend that like the inadmissible hearsay in Smith v. Allentown, Jonathan Cutler's testimony regarding the statements made to him by Malcolm

7

Williams would be excluded at trial as inadmissible hearsay and therefore cannot be considered on this motion for summary judgment. They further contend that like in <u>Smith</u> since Plaintiffs cannot identify an alternate source of Williams' statements, they lack admissible evidence that Roman and Dougherty ordered the hit on Plaintiff, Ramon Rodriguez. As a consequence they request dismissal at summary judgment.

Plaintiffs respectfully disagree. The one essential difference between the case at bar and <u>Smith</u>, which was overlooked by Defendants, is that Malcolm Williams up to the point of this filing, is nowhere to be found and quite likely will be unavailable to give testimony at trial.

The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." <u>Fed. R. Evid.</u> 801(c). Further, Rule 802 of the Federal Rules of Evidence generally excludes Hearsay unless otherwise provided by the rules of evidence. These provisions, or exceptions to the Hearsay Rule, include an exception for an unavailable declarant. <u>Fed. R. Evid.</u> 804, provides in relevant part, that a declarant is unavailable if he is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance or testimony by process or other reasonable means. However, a declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

In the case at bar, Plaintiffs have exerted great effort and expense in trying to locate Mr. Williams and as of this filing he cannot be found. As such, Mr. Williams' absence is not due to the procurement or wrongdoing on the part of Plaintiffs. <u>Fed. R. Evid.</u> 804. Presently, under the Rule, he is unavailable.

In the case of an unavailable declarant, Rule 804(b) of The Federal Rules of Evidence provides that a statement against interest is not excluded as Hearsay.  The Rule defines a statement against interest as one "which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, ……. that a reasonable person in the declarant's position would not have made the statement unless believing it to be true."  Here, the statement made by Mr. Williams to Mr. Cutler is certainly one which would subject Mr. Williams to civil or criminal liability, that a reasonable person in his position would not have made the statement unless believing it to be true.

In <u>Smith</u>, the alleged statements of Spang to Smith were inadmissible as a matter of law precisely because he **was** available to testify at trial and gave prior deposition testimony disavowing the "political enemy" comment.  Here, Mr. Williams is unavailable, and thus his statement against interest is admissible as an exception to Hearsay as provided by the above mentioned Federal Rules of Evidence.   Therefore, Mr. Williams' statements to Cutler are **capable** of admission at trial, and thus can be considered on a motion for summary judgment. *See* <u>Shelton v. Univ. of Med. & Dentistry of N.J.</u> 223 F.3d 220, 223 at n. 2 (3d Cir. 2000)

Moreover, the notes of the advisory committee on proposed rules note five specific instances of unavailability, number 5 being "Absence from the hearing coupled with inability to compel attendance by process or other reasonable means also satisfies the requirement."

The advisory committee reaffirms the language of the Rule by stating if the conditions otherwise constituting unavailability result from the procurement or wrongdoing of the proponent of the statement, the requirement is not satisfied.  Most notably, however, the advisory committee further stated that "the rule contains no requirement that an attempt be made to take

9

the deposition of the declarant.   Commenting further on the circumstantial guaranty of reliability for declarations against interest is the assumption that persons do not make statements which are damaging to themselves unless satisfied for good reason that they are true.   Hileman v. Northwest Engineering Co., 346 F.2d 668 (6th Cir. 1965).

In order to be against penal interest, the statement need not be an outright confession of guilt. United States v. Paguio, 114 F.3d 928, 933 (9th Cir. 1997); United States v. Barrett, 539 F.2d 244, 251 (1st Cir. 1976).   All that is required is that the statements tend to subject the declarant to criminal liability to such an extent that a reasonable person would not make the statement unless it was true.   United States v. Garcia, 897 F.2d 1413, 1420 (7th Cir. 1990); United States v. Lang, 589 F.2d 92, 97 (2d Cir. 1978). A statement may qualify though made to a friend, confederate, cellmate, or family member.   United States v. Mills, 704 F.2d 1553, 1562 (11th Cir. 1983) (one inmate to another), cert. denied, 467 U.S. 1243 (1984).

The question as to Williams' unavailability cannot be answered with certainty until the time of trial.   At the summary judgment phase, Williams' statements are capable of being admitted at trial and therefore can be used to oppose summary judgment.   Additionally, Williams' statements to Cutler were so far tended to subject him to civil or criminal liability that a reasonable person in his position would not have made the statement unless believing it to be true. Fed. R. Evid. 804(b)(3).   United States v. Paguio, 114 F.3d 928, 933 (9th Cir. 1997); United States v. Barrett, 539 F.2d 244, 251 (1st Cir. 1976);   United States v. Garcia, 897 F.2d 1413, 1420 (7th Cir. 1990); United States v. Lang, 589 F.2d 92, 97 (2d Cir. 1978); and United States v. Mills, 704 F.2d 1553, 1562 (11th Cir. 1983), cert. denied, 467 U.S. 1243 (1984).

It is expected that Defendants will argue in reply that Cutler's potential testimony regarding Williams' statements contain double hearsay because the testimony describes

statements that Williams made to Cutler about a conversation that Roman and Dougherty had with Williams. However, Fed. R. Evid. 805 instructs that "hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Thus, for the statements of Roman and Dougherty made to Williams to be considered on summary judgment through Cutler, Plaintiff must demonstrate that both layers of hearsay would be admissible at trial. If as Cutler testified Roman and Dougherty ordered Williams to assault Plaintiff that statement would qualify as an admission by a party opponent and would be admissible under Fed. R. Evid. 801(d)(2)(A). The statements from Williams to Cutler as previously demonstrated are capable of admission at trial as Williams is potentially unavailable for testimony at trial and the statement made was one against penal interest, and therefore can be used to oppose this motion. See Smith v. City of Allentown, 589 F.3d 684, 693 (3d. Cir. 2009).

### POINT III

### PLAINTIFF HAS PROPERLY ASSERTED A VIABLE CLAIM FOR §1983 CONSPIRACY AND THEREFORE SUMMARY JUDGMENT MUST BE DENIED.

Defendants have established the necessary standard for an Equal Protection Claim, however, Count Two of Plaintiffs' Complaint is a §1983 conspiracy claim. In order to prevail on a §1983 conspiracy claim, Plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right. Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999). It is an academic exercise to argue that Defendants were state actors operating under color of law in this matter. Therefore, the question presented for the §1983 conspiracy claim is whether Defendants conspired to deprive Plaintiff of his federally protected rights. As stated above, Plaintiffs improperly included Defendants Hall and

Sienna on this count in the amended complaint. Therefore, Plaintiffs concede that they should be dismissed from the Count Two, §1983 Conspiracy Claim.

Through the discovery process in this case, Plaintiffs have learned that Defendant Roman would sit and read through inmates' mail and remedy forms, against the policies and procedures of the prison, and Defendant Dougherty at the very least would sit there and laugh as Defendant Roman read. Moreover, Williams said that Roman and Dougherty told him to take down Plaintiff. Additionally, Defendants Roman and Dougherty would keep law and order in E-Unit using fear and intimidation. These actions in concert is factually sufficient to allege a conspiracy, and thus should not be dismissed at the summary judgment stage.

Finally, Defendant Easley, after learning from very trustworthy confidential informants that Defendants Roman and Dougherty had ordered this assault on Plaintiff, justified his omission of any wrong doing on behalf of the Defendants in his report by stating that those statements were hearsay and therefore he didn't include them. At least one of the confidential informants took a polygraph test on this issue. Defendant Easley was covering up the wrongdoing of Defendants Hall, Sienna, Roman and Dougherty by purposely and knowingly omitting said information from his report to the Prosecutor. This action is factually sufficient to allege a conspiracy, and thus should not be dismissed at the summary judgment stage.

POINT IV

### THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS THEY ACTED WITH DELIBERATE INDIFFERENCE TO PLAINTIFF'S WELL ESTABLISHED CONSTITUTIONAL RIGHTS.

Defendants correctly note the standard that qualified immunity shields government officials from civil damages under federal law if their conduct did not violate the "clearly established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The qualified immunity analysis must then include two questions.  The first is whether "the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001).  The second is whether any such constitutional right was "clearly established," and in particular, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02.

The seminal United States Supreme Court decision Farmer v. Brennan, 511 U.S. 825 (1994) states that the Plaintiff does not necessarily have to put Defendants on notice that "he feared an attack" in order to prevail.  The Farmer court specifically held a claimant's failure to give advance notice is not dispositive.  Plaintiff may establish Defendants' awareness by reliance on any relevant evidence.  Advance notification in a failure–to–protect Eighth Amendment claim is not a necessary element. Farmer at 848-849.  The Farmer court noted

> whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence …. and a fact finder may conclude that prison official knew of a substantial risk from the very fact that the risk was obvious. Failure to follow policy and procedures creates an obvious and inherent risk of harm as does the systematic and customary failure to enforce safety rules.

The combination of the two can have lethal consequences.  It is patently incongruous to find culpability in the situation where a Corrections Officer knew of a specific risk of harm but did nothing to prevent it on the one hand but to absolve the Corrections Officer of culpability who himself created the risk of harm in the first instance when he acted with deliberate indifference.

As Defendants have noted, Defendants Hall and Sienna were at their assigned posts on August 22, 2006.  However, we have come to learn that although they did not leave their posts, they were known by the inmates for allowing "a little more leeway" in terms of policies and

13

procedures with regard to inmate conduct. According to Jonathan Cutler, Defendant Sienna was asleep. They allowed the inmates to freely roam from unit to unit even though inmates were only supposed to have access to the unit they resided in. This laissez-faire attitude toward the policies of the prison gave way for this assault to take place. Certainly it is conceivable to the reasonable officer that this violation of the policies and procedures of the prison with regard to inmate conduct puts the constitutionally protected rights of the other inmates in jeopardy.

Moreover, in Beers Capitol v.Whetzel, 256 F.3d 120 (3rd Cir. 2001), the 3rd Circuit noted that Farmer anticipated that plaintiffs could make their case by showing that prison officials simply were aware of a general risk to inmates in the Plaintiff's situation. Beers at 131. Beers also noted that Farmer made clear that a prison official defendant cannot escape liability by showing that he did not know that this particular inmate was in danger of attack. "It does not matter … whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." Beers at 131 quoting Farmer at 843. Therefore, Defendants' contention that Defendants Hall and Sienna had no basis prior to the assault to believe that Plaintiff was at any risk of harm is not necessarily on point. Rather, it is only necessary to show that there was a general risk to the inmates and this risk was advanced by the action, or inaction, of Defendants Hall and Sienna.

After first establishing that the risk to Plaintiff created by the Defendants was objectively, sufficiently serious, which it clearly was, the court is then to inquire as to whether or not Defendants acted with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. at 297. In prison condition cases such as the case at bar, that state of mind is one of deliberate indifference to inmate health or safety. Wilson supra at 302-303. The Farmer court was called upon to define the meaning of deliberate indifference. The court held that

14

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer at 837.

As previously noted, the Farmer court held

> whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence …. and a fact finder may conclude that prison official knew of a substantial risk from the very fact that the risk was obvious.

Defendants Roman and Dougherty acted with deliberate indifference by giving confidential inmate remedy forms to known members of the Bloods gang, a known security risk, and told a Blood gang member to cause severe physical harm to Plaintiff to teach a lesson. Allowing known gang members access to confidential inmate remedy forms is clearly acting with deliberate indifference to the safety and wellbeing of other inmates, specifically Plaintiff. It is clear that this behavior removes these Defendants from being able to hide behind the shield of qualified immunity.

Likewise, Defendant Easley conducted a very thorough investigation surrounding this issue. He spoke with confidential informants and Corrections Officers alike, yet when he sent his report to the Prosecutor's office, there was no mention of any wrongdoing on behalf of the Corrections Officers, even though he characterized the statements of at least one confidential informant as very trustworthy. This is a violation of the victim's rights, and therefore he too should not be permitted to hide behind the shield of qualified immunity.

## POINTS V, VI, AND VII

All claims in the amended complaint that remain against Defendants in their official capacity should be dismissed. Plaintiff Ivelisse Rodriguez's per quod claim in the third count of

the amended complaint is actionable and should survive summary judgment so long as the claims contained in counts one and two prevail. Similarly, Plaintiffs claim for punitive damages should also survive summary judgment should the substantive claims contained in counts one and two of the amended complaint survive.

## CONCLUSION

Based upon the foregoing, Plaintiff's respectfully submit that Defendants motion for summary judgment must be dismissed.

By:    s/Jeffrey M. Patti
       Attorney for Plaintiffs

Dated: April 16, 2012