NOT FOR PUBLICATION                                          (Document No. 113)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| RAMON RODRIGUEZ and IVELISSE RODRIGUEZ, | : |
| Plaintiffs, | : Civil No. 08-4239 (RBK/KMW) |
| v. | : **OPINION** |
| GEORGE W. HAYMAN, et al. | : |
| Defendants. | : |

**KUGLER**, United States District Judge:

Currently before the Court is a motion filed by Defendants to hold Plaintiff's Counsel Jeffrey M. Patti, Esq. in contempt for violating the Court's January 24, 2011 Discovery Confidentiality Order ("DCO"). For the reasons stated herein, the Court finds that Mr. Patti, through his conduct at a November, 8, 2011 witness interview in Tom's River, New Jersey, clearly and deliberately violated the DCO. However, in its discretion, the Court will deny Defendants' motion to hold Mr. Patti in contempt. It will instead order him to pay the reasonable expenses incurred by Defendants as a result of the violation, including the costs of filing the instant motion. *See* Fed. R. Civ. P. 37(b)(2)(C).

**I.    FACTUAL BACKGROUND**

The facts underlying the motion are not in dispute. Mr. Patti represented Plaintiffs Ramon and Ivelisse Rodriguez in an action against Defendants. All Defendants were at some

time employees of the New Jersey Department of Corrections ("DOC"). They have been represented in this action by the office of the Attorney General of New Jersey.

On August, 22, 2006, Plaintiff Ramon Rodriguez, then an inmate at Bayside State Prison in Leesburg, New Jersey, was brutally beaten by three fellow prisoners. He brought suit against Defendants pursuant to 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment rights. Among other things, he claimed that certain Defendant Corrections Officers assigned to his housing unit deliberately left their posts so that the attack on him could occur unimpeded.

In the wake of Mr. Rodriguez's beating, the DOC's Special Investigation Division ("SID") conducted an investigation. SID officials interviewed numerous witnesses, including some of the prisoners who were directly involved in the attack. These prisoners' statements were kept confidential, given the obvious risks to their safety that would result were it to become known to the general prison population that they had provided information to prison authorities about the persons ultimately responsible for injuring Mr. Rodriguez.

As discovery in this matter got underway, Defendants quickly recognized the need to take special measures to keep these statements confidential. Accordingly, on January 20, 2011, Defendant's principal attorney, Deputy Attorney General Daniel Vannella, submitted to the appropriate magistrate judge, the Honorable Karen M. Williams, a Discovery Confidentiality Order (Doc. No. 42). Both Mr. Vannella and Mr. Patti had agreed to the terms of the DCO before it was submitted to Judge Williams. Accordingly, Judge Williams, along with Mr. Patti and Mr. Vanella, signed the order three days later, at which point it took effect (Doc. No. 47). The Order applied to all documents listed in an attached Confidential Information Log. DCO ¶ 2. The Log, referencing documents by both Bates number and narrative description, included two written statements and four transcribed tape-recorded statements that had been collected

during the SID's investigation.  Decl. of Daniel Vanella, Exh. A (Doc. No. 113-3).  The DCO placed strict limits on the disclosure of the referenced documents.  DCO ¶ 2.  Of particular relevance, it made clear that such documents could not be disclosed to anyone who was a "current or former inmate[] in a state or county correctional facility."  *See id.* ¶ 2(A).

On November 8, 2011, Mr. Patti, along with a private investigator, conducted an interview at a Perkins Restaurant in Tom's River, New Jersey with Mr. C,[1] a former inmate at Bayside State Prison who was involved in the attack on Mr. Rodriguez.[2]  During the course of that interview, Mr. Patti and his investigator produced the two handwritten confidential informant statements from the SID's investigation which were subject to the DCO.  The first statement was Mr. C's own.  The second statement belonged to another prisoner who witnessed the attack, although that prisoner was not identified by name.  Mr. C was handed the second statement, prompting to the following exchange:

> **Investigator**: Take a look at it, and let me know if that is the statement that Investigator Easley took from you.  Have you ever seen that before?
> **C**: No.
> … …
> **Investigator**:  So this was not your statement?
> **Patti**:  I don't think this is his.
> … …
> **Patti**:  Do you think you can identify or recognize whose statement that is?
> **C**: … I don't know.
> **Investigator**: From the language, might you be able to tell who that is?  Do you know anyone who would use those expressions?
> **C**: [mumbles]
> **Investigator**: Also if you recognize the handwriting…

After the interview, although it was apparent that he and his investigator had violated the DCO by showing Mr. C a copy of this unidentified witness's statement, Mr. Patti made no effort to

---

[1] The surname "C" is abbreviated in order to protect that individual's anonymity.
[2] Mr. Patti made an audio recording of this interview, a copy of which was provided to the Court as an attachment to Defendants' motion.

3

apprise his adversary Mr. Vannella of the situation. Instead, a few days later, Mr. Patti simply sent Mr. Vanella an audio recording of the entire interview. After listening to the interview, Mr. Vanella filed the instant motion to hold Mr. Patti in contempt for this apparent violation of the DCO (Doc. No. 113). Finally, on May 2, 2013, the Court heard oral argument on the motion.

## II.     DISCUSSION & ANALYSIS

If it appears that a party has violated an order issued by a federal magistrate judge and that violation constitutes a civil contempt, the magistrate judge must provide the district court judge with a certification of the relevant facts underlying the apparent violation. *See* 28 U.S.C. § 636(e)(6)(B)(iii). The district judge will then hold a hearing and decide whether the conduct in question of warrants punishment. *Id.* Under the Federal Rules of Civil Procedure, violating a discovery order may call for sanctions, including, as Defendants urge, holding the disobedient party in contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(vii). As an alternative, the Court may order the responsible party, or its attorney, to pay the costs, including reasonable attorney's fees, caused by the violation. Fed. R. Civ. P. 37(b)(2)(C). At all times, the decision whether or not to levy sanctions, as well as what form those sanctions may take, is committed to the sound discretion of the district judge.

In this case, Judge Williams provided a section 636(e) certification which the Court accepts in its entirety. The facts established in that certification demonstrate without question a violation of the Court's January 24, 2011 Discovery Confidentiality Order: Mr. Patti and his investigator were in possession of documents that were clearly covered by the DCO; the DCO said that such documents could not be disclosed to former inmates of a state correctional institution; Mr. C was a former inmate of Bayside State Prison; Mr. Patti and his investigator provided Mr. C with these documents and asked him pointed questions about them.

Having determined that Mr. Patti violated the DCO, the Court must still decide what sort of sanction to impose. On the one hand, the Court is mindful of Mr. Patti's and his counsel's representations at oral argument that Mr. Patti did not arrive at the witness interview on November 8, 2011 with a premeditated intent to show Mr. C confidential documents in order to have him identify other cooperating informants in the SID's investigation. While it is inclined to accept these representations, the Court, carefully considering Mr. Patti's statements during the interview, cannot conclude, as Mr. Patti urges, that the violation was purely an accidental or *de minimus* one either. Even stipulating that Mr. Patti and his investigator intended to provide Mr. C a copy of his own statement and unintentionally handed him the wrong document,[3] it is clear from the interview transcript that the mistake was quickly discovered; that is, the investigator asked Mr. C if he had ever seen the handwritten document before, to which Mr. C responded "No." Less than a minute later, Mr. Patti himself realized, "I don't think this is his [statement.]" But instead of immediately taking the statement out of Mr. C's hands and moving on to another matter, Mr. Patti asked whether Mr. C could identify the other confidential informant. He then sat idly by while his investigator asked two more pointed questions directed at this same purpose. Finally, the Court is at a loss to understand why Mr. Patti took no action after the interview was concluded to alert his adversary to the issue, to acknowledge that he had made a mistake by violating the DCO, and to inquire as to what remedial action, if any, was necessary. At oral argument, Mr. Patti offered no satisfactory answer to the Court's questions on this issue. All of these circumstances convince the Court that Mr. Patti committed a knowing and willful violation of the January 24, 2011 DCO.

---

[3] The Court notes, and the parties acknowledged at oral argument, that under the terms of the Discovery Confidentiality Order, showing Mr. C a copy of his *own* statement would still constitute a technical violation, albeit one that standing alone would probably not warrant serious sanctions.

In addition, in determining the proper remedy for Mr. Patti's violation, the Court is mindful that it cannot judge his actions in a vacuum. Rather, it must consider them in the larger context of the policies underlying the particular Discovery Confidentiality Order entered in this case. At oral argument, Defendants' counsel capably articulated the two principal reasons that the Office of the Attorney General of the State of New Jersey seeks such orders in cases involving a violent attack at a state correctional facility. First, when the Special Investigations Division at the Department of Corrections sets about investigating such incidents, it is often faced with a difficult and sensitive task. Proper investigation is necessary in order to do justice to the victim. It is also necessary for the adequate management of the prison itself. It hardly bears mention that prisons are dangerous places; poorly functioning facilities can place the safety of inmates and corrections officers in potentially serious danger. Accordingly, when a prison beating occurs, SID officers must find out why the victim was attacked, who was involved, and whether, as Mr. Rodriguez alleged in this case, there was collaboration between prison officials and inmates in carrying out the attack. Finding answers to these questions would be extremely difficult if SID officers could not rely upon standard police investigation techniques, including the use of confidential informants. Thus, it is imperative that these officers be able to ensure prospective informants that their anonymity will be maintained were they to provide potentially vital information. The failure to do so may prevent persons both from responding candidly to investigators' questions after an incident, or from coming forward to make prison officials aware of an imminent attack that might then be prevented.

Second, the use of a confidentiality order can be essential for preserving a productive and trustful relationship between government agencies. Here, the New Jersey Attorney General's Office and the New Jersey Department of Corrections are coordinate entities in the state's

government bureaucracy; neither directly supervises the other.  In this and similar cases, they enter into an attorney-client relationship.  As the client, the Department of Corrections must have assurances that it can share information with its attorney, the Attorney General's office, that is necessary to defending itself against civil claims.  If it feels that discovery confidentiality orders will not be observed by the parties involved in the litigation, then it will be faced with something of a Hobson's choice: either provide the sensitive information, knowing that there is a chance it will be revealed to outside parties, thereby implicating all of the risks to prison management discussed above; or keep the information private, thereby preventing potentially probative evidence from being considered by a judge or jury in determining questions of liability and damages.  The effect of imposing such a choice would be to strain the relationship between these two state agencies.

Both of these considerations weigh heavily in the Court's decision whether to hold Mr. Patti in contempt.  Here, the disclosure of the confidential informant statements to Mr. C was exactly the type of act that implicated the policies behind the DCO, placing in potential jeopardy both the proper functioning of state's corrections system as well as the continued positive relationship between the Office of the Attorney General and the Department of Corrections.  This type of behavior simply cannot be tolerated.  It is for these reasons that the Court cannot excuse without punishment Mr. Patti's violation.

However, the Court, in its discretion, does not believe that the only possible remedial avenue before it is to hold Mr. Patti in contempt.  Mr. Patti expressed remorse about his actions at oral argument.  He did not dispute that he had violated the DCO.  Although the Court cannot find that his violation was accidental, it also finds no evidence that Mr. Patti arrived at the Perkins Restaurant in Tom's River, New Jersey on November 8, 2011 with the intent to enlist

Mr. C in helping him identify the confidential informant who had authored the statement in question. For these reasons, rather than finding Mr. Patti's actions warrant holding him in contempt, the Court will order an alternative sanction specifically provided for under the Federal Rules of Civil Procedure: he shall be ordered to pay the reasonable expenses, including attorney's fees, caused by his actions. Fed. R. Civ. P. 37(b)(2)(C).

### III. CONCLUSION

For the reasons stated above, the Court finds that Jeffrey M. Patti, Esq., through his actions at a witness interview on November 8, 2011 in Tom's River, New Jersey, violated the Court's January 24, 2011 Discovery Confidentiality Order. It will therefore order him to pay the costs incurred by Defendants as a result of his violation. Defendants may respond within thirty (30) days with appropriate documentation quantifying such costs. The Court will issue an appropriate order.

Dated: 7/16/2013                                  /s/ Robert B. Kugler
                                                  ROBERT B. KUGLER
                                                  United States District Judge